UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DANIEL RODRIGUEZ**, on his own behalf
and all similarly situated individuals,
    Plaintiffs,
v.                                                   Case No.: 8:13-cv-2711-T-26AEP

**HOME HEROES, LLC**, a Florida Profit
Corporation, and **HAROLD J. MYERS**,
individually,
    Defendants.
_____/

**DEFENDANTS, HOME HEROES, LLC, AND HAROLD J. MYERS', MOTION FOR SUMMARY JUDGMENT WITH SUPPORTING MEMORANDUM OF LAW**

Defendants, Home Heroes, LLC and Harold J. Myers (hereinafter collectively, "Defendants"), pursuant to Federal Rule of Civil Procedure 56, Local Rule 3.01, and this Court's Case Management and Scheduling Order dated January 9, 2014, and Order re-setting dispositive motion deadlines dated October 17, 2014, respectfully move for summary judgment on all counts of Plaintiff's Complaint, and state as follows in support thereof:

**INTRODUCTION**

This case involves application of the Fair Labor Standards Act's ("FLSA") overtime exemption for certain employees paid under a bona fide commission pay plan, by which all or more than half of the employees' compensation comes from commission, as outlined per 29 U.S.C. § 207(i) [hereinafter, also referred to as "7i" exemption].[1]  Plaintiff, Daniel Rodriguez,

---

[1] An employer may avoid the payment of overtime wages to an employee under the 29 U.S.C. § 207(i) exemption when the employer is a retail or service establishment, and "(1) the regular rate of pay of such employee is in excess of one and one half times the minimum [wage], and (2) more than half of his compensation for a representative period (not less than one month) represents commissions on goods or services." 29 U.S.C. § 207(i). "Regular rate of pay" is determined by dividing an employee's total pay for any workweek by the total number of hours actually worked by the employee in that workweek. 29 CFR § 778.109.  However, the "regular rate of pay" provision does not require that an employee be compensated on a weekly basis, or even that an employee receives regular commission payments; ultimately, because of the sometimes-unpredictable nature of commission-based earnings, it only requires that a demonstrative regular rate of pay be calculated. See 29 C.F.R. § 778.120.

and opt-in Plaintiff, Zachary Fredryck (hereinafter collectively the "Plaintiffs"), allege that they were not paid overtime and minimum wages for hours that they worked while employed by Defendants as commissioned, on-call plumbing service technicians.

Defendant, Harold J. Myers, individually, is not an "employer" under the FLSA, 29 U.S.C. § 203(d), and therefore cannot be held liable for any potential FLSA violations. If Defendant, Harold J. Myers, is found to meet the FLSA's definition of an employer, then there is also no liability for Myers and Home Heroes, LLC because Home Heroes, LLC properly paid Plaintiffs by applying the overtime exemption permitted by 29 U.S.C. § 207(i), as Plaintiffs were paid more than time-and-a-half the applicable minimum wage for every hour that they worked for Home Heroes, LLC. Finally, Plaintiffs' claims must fail because they have not presented sufficient evidence of the unaccounted for hours allegedly worked that would support any just and reasonable inference of Defendants' non-compliance with the 207(i) exemption. Defendants have accurate records of the hours worked by Plaintiffs, which were either self-reported by Plaintiffs or diligently compiled by Defendants' staff; these records, therefore, rebut the allegations made by Plaintiffs as a matter of law.

## MEMORANDUM OF LAW

### I. Summary Judgment Standard

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or, by showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Id.

The substantive law applicable to a case determines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The district court should 'resolve all reasonable doubts about the facts in favor of the non-movant,' ... and draw 'all justifiable inferences ... in his favor....' " United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir.1991). The court may not weigh conflicting evidence nor make credibility determinations. Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir.1993). As a general rule, "[the] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the case's record which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Under Federal Rule of Civil Procedure 56(c), Plaintiffs have the burden at summary judgment "to come forward with specific facts on each essential element of [their] claims showing that there is a genuine issue for trial such that a reasonable jury could find in [their] favors." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient, "there must be evidence on which the jury could reasonably find for the plaintiff." Liberty Lobby, Inc., 477 U.S. at 252.

## II. Defendant, Harold J. Myers, Individually, Is Not An Employer Under the FLSA

Defendant, Harold J. Myers, individually (hereinafter "Mr. Myers"), was the sole owner of Defendant, Home Heroes, LLC. *See* **Defendants' Statement of Undisputed Facts ("#DSUF"), para. 22.** The FLSA defines "employer" to "include[ ] any person acting directly or indirectly in

the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An individual's status as a corporate officer alone is insufficient to render the individual an "employer" to hold the officer personally liable for unpaid overtime or minimum wages. Patel v. Wargo, 803 F.2d 632, 637–38 (11th Cir.1986). Rather, to be personally liable as an "employer," a corporate officer "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." Id. at 638. In determining whether a corporate officer is an "employer," it must be considered whether the officer was involved in the compensation of employees, the hiring or firing of employees, or other matters "in relation to an employee," such as controlling work schedules or conditions of employment. See Alvarez Perez v. Sanford–Orlando Kennel Club, Inc., 515 F.3d 1150 (11th Cir.2008); Patel, 803 F.2d at 638; Santos v. Cuba Tropical, Inc., 829 F.Supp.2d 1304 (11th Cir. 2011); see also 29 U.S.C. 203(d).

Although Mr. Myers, as the company's owner, possessed ultimate authority over all aspects of Home Heroes, LLC's, business, he was not sufficiently involved in its day-to-day operations, or exercise day-to-day control of the operations, to be deemed an employer under the FLSA. Mr. Myers did not interview, hire, fire, or supervise Plaintiffs in this case. See **#DSUF, para 23.** The daily issues of Plaintiffs' employment were handled by a general manager and field supervisors, called "channel managers." See **#DSUF, para. 24.** Plaintiffs' commission pay plans were explained to them by the general manager, Andres Fontana, or one of their channel managers, Brandon Knowles, and they were to go to Mr. Fontana, Mr. Knowles, or Heather Reaves in Human Resources, if they had issues with their pay. See **#DSUF, para. 25**. The extent of personal involvement that Mr. Myers had with Plaintiffs was assisting in leading their training classes, and occasionally working on a job with Plaintiff Fredryck. See **#DSUF, para. 26**.

Therefore, because Plaintiffs' testimony indicates that Mr. Myers was not directly and

consistently involved in the day-to-day operations of the business and supervision of their employment, Mr. Myers cannot be found an individual employer under the FLSA, as a matter of law.

### III.     Standards Applicable to the Evaluation of FLSA Claims

#### a. Overtime-exemption-availability under the FLSA

Employers bear the burden of proving the applicability of exemptions to the overtime provisions of section 207 of the FLSA by clear and affirmative evidence. Lee v. Ethan Allen Retail, Inc., 651 F.Supp.2d 1361 (11th Cir. 2009). Further, exemptions from these overtime provisions are to be narrowly construed against the employer, and liberally interpreted in the employee's favor. Birdwell v. City of Gadsden, 970 F.2d 802, 805 (11th Cir. 1992). Whether or not employee compensation plans are in substantial compliance with these provisions of the FLSA is an issue of law to be determined by the courts. Klinedinst v. Swift Investments, Inc., 260 F.3d 1251 (11th Cir. 2001).

#### b. Burdens of proof specifically applicable to claims of unpaid minimum or overtime wages under the FLSA

An employee who brings suit under § 216(b) of the FLSA for unpaid minimum wages or unpaid overtime compensation and liquidated damages has the initial burden of proving that he performed work for which he was improperly compensated. Santelices v. Cable Wiring, 147 F.Supp.2d 1313 (11th Cir. 2001). When an employee is unable to secure accurate records showing the precise extent of uncompensated work, he must prove that he has *in fact* performed work for which he was improperly compensated *(emphasis added)*. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687–88, (1946), *superseded by statute on other grounds as stated in* Carter v. Panama Canal Co., 463 F.2d 1289, 1293 (D.C.Cir.1972). If he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable

inference, the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. Id. at 687–88. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate. Id.

Where an employee offers only testimony to prove that he worked hours for which he was not compensated, an employer's accurate records of the employee's hours worked can defeat the employee's assertions. See Santelices v. Cable Wiring, 147 F.Supp.2d 1313 (11th Cir. 2001); Brock v. Seto, 790 F.2d 1446, 1448 (9th Cir.1986); Marshall v. Hope Garcia Lancarte, Inc., 632 F.2d 1196 (5th Cir. 1980).

**IV.    Plaintiffs Were Exempt from Overtime Wages Under the FLSA's 207(i) Retail Sales or Services Exemption**

As previously noted, the FLSA's retail or service establishment exemption applies where: (1) an employee was employed by a retail or service establishment; (2) the employee's regular rate of pay was more than one and one-half times the minimum hourly rate; and (3) more than half of the employee's compensation comes from commissions.  29 U.S.C. § 207(i); 29 C.F.R. § 779.412.  This exemption was satisfied by the circumstances of Plaintiffs' employment with Defendant, Home Heroes, LLC, and they were thereby exempt from distinctly receiving overtime wages when they worked more than 40 hours per week. Not only was the exemption satisfied, but Plaintiffs were also compensated at all times by the equivalent of more than one and one-half times Florida's applicable minimum wage per hour worked throughout the duration of their employment, ensuring that the FLSA's basic minimum wage and overtime requirements were always met.

### A. Defendant Was a Retail or Service Establishment

#### i. Applicable Law

According to 29 C.F.R. § 779.24, a "retail or service establishment" under the FLSA shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry. 29 C.F.R. § 779.318 lists various factors which determine whether an establishment qualifies as a retail or service establishment. 29 C.F.R. § 779.318 lists various factors which determine whether an establishment qualifies as a retail or service establishment. Such establishments (1) sell goods or services to the general public; (2) serve the everyday needs of the community; (3) are at the very end of the distribution stream and are not a part of the manufacturing process, and; (4) provide the general public its repair services and other services for the comfort and convenience of such public in the course of its daily living. Id.

While construction contractors, plumbing contractors, and other similar contractors lack a retail concept, *companies* that provide general repair services for the public (such as auto repair shops, household refrigerator repair shops and clock repair shops) can qualify as retail or service establishments. *See* 29 C.F.R. §§ 779.317-.321. Such repair services may qualify under section 7(i) even when they are sometimes performed for a commercial user rather than a homeowner, so long as the commercial repair services do not require the use of specialized facilities or equipment and the services are not different services than those provided for the general consuming public. *See* 29 C.F.R. §§ 779.318(b), .329; DOL Wage and Hour Opinion Letters July 14, 1982 and October 19, 1981.

#### ii. Analysis

Defendant, Home Heroes, LLC, qualifies as a retail or service establishment under the 7i

exemption. It was a residential drain cleaning and plumbing retail and service company. *See* **#DSUF, para. 2**. Plaintiffs' positions as service technicians involved the performance of a plumbing service, for the company's residential customers, and the sale of a retail part or material needed for the job. *See* **#DSUF, para. 9**. Finally, Plaintiffs' were not plumbing contractors, but employees of Home Heroes, LLC, who drove company vehicles, solidifying an appreciation that the business was both a retail and a service establishment, operating to provide services with a retail concept. *See* **#DSUF, para. 3, 15.**

### B. Plaintiffs Were Paid More Than One and One-Half Times the Minimum Hourly Rate

#### i. Applicable law

The "regular rate" of pay under the FLSA has been described by the Supreme Court as the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed — an "actual fact." 29 C.F.R. § 778.108 and 29 CFR § 779.419(b), *citing* Walling v. Youngerman–Reynolds Hardwood Co., 325 U.S. 419 (1945). It is a rate per hour, computed for the particular workweek by a mathematical computation in which hours worked are divided into straight-time earnings for such hours to obtain the statutory regular rate. 29 CFR § 779.419(b), *citing* Overnight Motor Co. v. Missel, 316 U.S. 572 (1942). Because the FLSA does not require employers to compensate employees on an hourly rate basis, as their earnings may be determined on a piece-rate, salary, commission, or other basis, overtime compensation must be computed on the basis of the hourly rate derived therefrom and, therefore, it is necessary to compute the regular hourly rate of such employees during each workweek. 29 CFR § 778.109. In circumstances where the exact number of hours worked by an employee under the 7(i) exemption is unclear, the 11th Circuit has looked to annual compensation divided by potential weekly hours worked to determine whether or not the second requirement of the 7(i) exemption

8

has been satisfied. See <u>Kuntsmann v. Aaron Rents, Inc.</u>, 903 F.Supp.2d 1258 (11th Cir. 2012).

Commissions (whether based on a percentage of total sales or of sales in excess of a specified amount, or on some other formula) are payments for hours worked and must be included in the regular rate. 29 C.F.R. § 778.117. This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the method, frequency, or regularity of computing, allocating and paying the commission. <u>Id</u>. *It does not matter whether the commission earnings are computed daily, weekly, biweekly, semimonthly, monthly, or at some other interval (emphasis added).* <u>Id</u>. The fact that the commission is paid on a basis other than weekly, and that payment is delayed for a time past the employee's normal pay day or pay period, does not excuse the employer from including this payment in the employee's regular rate. <u>Id</u>.

Furthermore, despite the 7i exemption's requirement of a weekly rate of pay calculation, if it is not possible or practicable to allocate the commission among the workweeks of the period in proportion to the amount of commission actually earned or reasonably presumed to be earned each week, some other reasonable and equitable method may be adopted. 29 C.F.R. § 778.120. Methods considered acceptable per 29 C.F.R. § 778.120(a) ultimately involve calculating a demonstrative weekly rate by creating an estimated annual commission and dividing the figure by the number 52, indicating that a weekly rate of pay for purposes of determining compliance with the 7(i) exemption may be assessed by looking to an employee's annual earnings and an average hourly compensation. The C.F.R.'s specific provision regarding recordkeeping applicable to the 7(i) exemption, 29 C.F.R. § 516.16, reiterates this position by excusing employers from documenting daily and weekly rates of pay, as well as total wages per pay

period, as is required per hourly employees (by 29 C.F.R. § 516.2).

### ii. Analysis

#### a. Computation of Plaintiffs' Time Records

Although Plaintiffs were paid by commission only, the hours that they worked were logged by Home Heroes, LLC's home office. *See* **#DSUF, para. 11-12, 17, 18, 28.** Plaintiffs also often self-reported the hours that they worked and signed off on time sheet verifying their hours worked. *See* **#DSUF, para. 13.** However, even if hours worked were not self-reported, they were closely tracked because of the way that service technicians, including Plaintiffs, communicated with the home office and because they drove company trucks with GPS systems. Hours tracked included time spent by service technicians in training classes or meetings, and periods of two hours or less in between their jobs. *See* **#DSUF, para. 28-29.**

Service technicians were on-call and advised of plumbing jobs by dispatch text messages sent to their cell phones from Home Heroes, LLC's home office. *See* **#DSUF, para. 10.** Service technicians communicated back to the home office via text messages. *See* **#DSUF, para. 11.** They were responsible for sending text messages to indicate that they would take on an assignment, when they arrived at a job site, and when they were leaving a job site or had completed an assignment. *See* **#DSUF, para. 11.** Text messages sent between the service technicians and Home Heroes, LLC's home office were tracked by a third-party servicing company, called Service Titan, and a Home Heroes, LLC, Gmail account. *See* **#DSUF, para. 12.**

Service technicians' vehicles were tracked by GPS, though a servicing company called Fleetmatics. *See* **#DSUF, para 16.** The truck movements tracked by Fleetmatics' GPS were available to the home office through software, and were reviewed on a real-time basis by the home office to additionally determine and document the hours that each service technician

worked. *See* **#DSUF, para. 17.** The GPS data tracked by Fleetmatics showed the specific addresses that the trucks were at throughout the day, verified by Google maps, as well as the trucks' paths of travel. *See* **#DSUF, para. 27.**

The home office, supervised by Home Heroes, LLC's bookkeeper, Heather Reaves, would review the data available through Service Titan and the Gmail account, and the GPS locations of the service technicians' trucks via Fleetmatics, to compile weekly timesheets of the hours worked by service technicians. *See* **#DSUF, para. 18, 28.** Hours tracked and logged as worked also included time spent by service technicians in training classes or meetings. *See* **#DSUF, para. 29.** For purposes of ensuring compliance with the 7i exemption, periods of two hours or less in between the service technicians' jobs were separately tallied as "travel time" hours worked (travel time is deducible by reviewing the job times noted on the service technicians' weekly timesheets). *See* **#DSUF, para. 30.** Time worked by the service technicians on a given day was first calculated by looking to their initial arrivals at job sites. *See* **#DSUF, para. 31**. If a meeting or training began in the morning, before a service technician attended a job, his time worked was first calculated by looking to his arrival time to the meeting or training. *See* **#DSUF, para. 32.** Service technicians' departures from job sites, or meetings or trainings, which constituted their final work-related activity for a given day, were considered the end of their work days for the purposes of calculating hours worked. *See* **#DSUF, para. 33.**

### b. Calculation of Plaintiffs' Regular Rates of Pay

Plaintiff Rodriguez worked for Defendant, Home Heroes, LLC, from October of 2012 to June of 2013. *See* **#DSUF, para. 4.** During this timeframe, between his time spent on the job, in training classes, and travelling for two-hour intervals between jobs, Home Heroes, LLC's, records, complied as explained above, show that he worked a total of **807.66 hours**. *See*

11

**Affidavit of Heather Reaves, Attachment "Danny Rodriguez Payroll & Hours," total columns labeled 'Orig. Hours' and 'Travel;' Rodriguez Timesheets, generally.** Plaintiff received gross wages of $3,353.62 in 2012 and $14,440.97 in 2013, totaling **$17,794.59**. *See* **Deposition of Daniel Rodriguez, Exhibit #3, attached hereto as Exhibit C.**

Plaintiff Fredryck worked for Defendant, Home Heroes, LLC, from February 2013 to November of 2013. *See* **#DSUF, para. 5.** During this timeframe, between his time spent on the job, in training classes, and travelling for two-hour intervals between jobs, Home Heroes, LLC's, records, compiled as explained above, show that he worked a total of **1,307.67 hours**. *See* **Affidavit of Heather Reaves, Attachment "Zach Fredryk(sic) Payroll & Hours," total columns labeled 'Orig. Hours' and 'Travel;' Fredryck Timesheets, generally.** Opt-in Plaintiff received gross wages of **$20,432.43** in 2013. *See* **Deposition of Zachary Fredryck, Exhibit #3, attached hereto as Exhibit D.**

The length and price of Plaintiffs' jobs fluctuated by week, and some jobs lasted for more than a week; furthermore, service technicians were not paid commissions on jobs until they were complete and paid for. *See* **#DSUF, para. 19-21.** Therefore, given the uncertainty of the weekly commission earned by service technicians, under 29 C.F.R. § 778.120, it is acceptable to evaluate the 7i exemption's requirement of a weekly rate of pay calculation by a proportionate, reasonable and equitable method, such as by estimating or averaging a weekly rate of pay by looking to annual earnings.

By looking to the aforementioned figures, and simply dividing Plaintiffs' gross wages by the hours that they worked, including their time spent in training classes and meetings, and their travel time of two hours or less between jobs, Plaintiff Rodriguez earned **$22.03 an hour**, and Plaintiff Fredryck earned **$15.63 an hour**. Florida's 2012 minimum wage was $7.67 an hour,

and in 2013 it was 7.79 an hour, leading to respective time and a half figures of $11.505 and $11.685. *See* **DEO Florida Minimum Wage History, attached hereto as Exhibit H.** Therefore, for any weeks in Plaintiffs may have worked overtime, they were already being compensated the equivalent of at least the applicable time and a half per hour; i.e., their regular rate of pay was in line with that required by 29 U.S.C. § 207(i)(2), the second requirement of the 7(i) exemption.

With respect to any potential idle time[2] argument by Plaintiffs, even if Plaintiffs are given the benefit of the doubt for summary judgment purposes and all of their potential idle time or additional travel time is calculated as hours worked, their weekly rates of pay still exceeded time and one half Florida's applicable minimum wage. By considering all of the time between Plaintiffs initial arrivals to job sites, training classes, or meetings, and their final departures for the work day from the same, which included non-travel personal time, Plaintiffs worked a total of **1,117.08** and **1,570.88 hours**, respectively. *See* **Affidavit of Heather Reaves, Attachments "Danny Rodriguez Payroll & Hours" and "Zach Fredryk(sic) Payroll & Hours," column labeled 'All Hours,' which includes total of columns 'Meeting Training,' 'Travel,' 'OnSite,' and 'Avail Off;'** *see also* **Rodriguez Timesheets and Fredryck Timesheets, generally.** By

---

[2] As will be discussed below, Plaintiffs were plumbing technicians who were essentially "on call" during their work days, and who experienced idle time in between their calls. Whether time spent by on-call employees known as "idle time" is compensable is typically a fact question. Leonard v. Carmichael Properties & Management Co., 614 F.Supp. 1182 (11th Cir. 1985). However, in the present case, even if the facts are viewed in Plaintiffs' favor, summary judgment is still appropriate as they were still paid time and a half for all hours worked even if you include idle time hours in the calculation.

To determine whether idle time is compensable, two factors to be considered are whether the time is spent predominantly for the employer's or employee's benefit, and whether the time is of sufficient duration and taken under such conditions that it is available to employees for their own use and purposes disassociated from their employment time. Blum v. Great Lakes Carbon Corp., 418 F.2d 283, 284 (5th Cir.1969). Although idle time creates a fact issue, case law is clear that an employee's free time must be severely restricted for off-time to be construed as work time for purposes of the FLSA. See Cole v. Farm Fresh Poultry, Inc., 824 F.2d 923 (11th Cir.1987) (chicken processing plant was required to compensate employees for time they spent waiting while the assembly line was down and being repaired); Birdwell v. City of Gadsden, 970 F.2d 802, 805 (11th Cir. 1992) (detectives' off-time was not so restricted that it was not used predominately for their benefit; they could do anything they normally did so long as they were able to respond to a call promptly and sober).

these totals, Plaintiff Rodriguez and Plaintiff Fredryck still made weekly rates of pay of **$15.93** and **$13.01**, respectively, which also satisfy 29 U.S.C. § 207(i)(2), as they were more than time and a half the applicable minimum wage.

### c. Plaintiff and opt-in Plaintiff have not offered sufficient evidence of their hours alleged worked

Plaintiffs allege to have worked between 40 and 60 hours per week. *See* **#DSUF para. 35.** Plaintiffs both testified that they estimate working roughly 40 to 60 hours per week, despite their time records indicating otherwise, and yet also admitted that they did not keep track of their hours worked. *See* **#DSUF para. 35.** As previously noted, an employer's accurate records of the employee's hours worked can trump an employee's assertions via mere testimony as a matter of law. See Santelices 147 F.Supp.2d 1313; Brock, 790 F.2d 1446, 1448; Marshall, 632 F.2d 1196. In the present case, Plaintiffs actually signed off on and verified their time records on many occasions, and they have not produced any evidence of hours worked *in fact* as alleged, as required per Anderson, 328 U.S. 680. By their deposition testimonies, Plaintiffs asserted that their logged hours were incorrect based upon their memories, and nothing more. Additionally, Plaintiff Fredryck testified that he thought his timesheet records were only off because of possibly undocumented drive time. *See* **#DSUF para. 36.** However, as explained in the section above, Plaintiffs' drive time is a non-issue: if Plaintiffs are given the benefit of the doubt and all potential idle time is assumed in their favor, Plaintiffs were still compensated by the equivalent of more than time and one half per hour.

To defeat summary judgment, a plaintiff must produce more than a mere scintilla of evidence; there must be evidence on which a jury could reasonably find for the plaintiff. Liberty Lobby, Inc., 477 U.S. at 252. Therefore, it may be found that, as a matter of law, Plaintiffs have

not produced sufficient evidence to rebut Defendant's records, and their regular rate of pay as asserted must stand.

### C. More than Half of Plaintiff's Compensation Came From Commissions

#### i. Applicable law

Whether compensation representing commissions constitutes most of an employee's pay, so as to satisfy the last requirement of the 7(i) exemption, must be determined by testing the employee's compensation for a "representative period" of not less than 1 month. 29 CFR § 779.417(a). The FLSA does not define a representative period, but plainly contemplates a period which can reasonably be accepted by the employer, the employee, and disinterested persons as being truly representative of the compensation aspects of the employee's employment on which this exemption test depends. Id.

A representative period within the meaning of this exemption may be described generally as a period which typifies the total characteristics of an employee's earning pattern in his current employment situation, with respect to the fluctuations of the proportion of his commission earnings to his total compensation. Id. To this end the period must be as recent a period, of sufficient length to fully and fairly reflect all such factors, as can practicably be used. 779.417(b).

#### ii. Analysis

Service technicians were paid by commission only, and Plaintiff Rodriguez only ever worked as a service technician. *See* **#DSUF para. 8.** However, in addition to working as a service technician, Plaintiff Fredryck worked as a helper, under a daily rate, for approximately two months. *See* **#DSUF para. 6; Fredryck Timesheets, October 2013 to November 2013.** Totaling the wages earned as a helper, opt-in Plaintiff made $2,868.40. *See* **Fredryck**

15

**Timesheets, October 2013 to November 2013; Affidavit of Heather Reaves, Attachment "Zach Fredryk(sic) Payroll & Hours," totals of column 'Commission,' weeks ending 10/06/2013 to 12/1/2013.** Because Plaintiff Fredryck received gross wages of **$20,432.43** in 2013, more than half of his compensation was earned by commission, satisfying the third element of the 7(i) exemption. *See* **Fredryck Depo, Exhibit #3.**

## CONCLUSION

For all of the aforementioned reasons, the Court should grant Defendants' instant Motion in its entirety, holding that Defendant, Harold J. Myers, individually, was not an employer under the FLSA, and that Defendants did not violate the FLSA in their payment method to Plaintiffs.

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of November 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which I understand will send a notice of electronic filing to all counsel of record.

By: /s/ Brian D. Rubenstein
BRIAN D. RUBENSTEIN
FBN: 0016997
JENNIFER LULGJURAJ
FBN: 98668
Counsel for Defendants
Cole, Scott & Kissane, P.A.
4301 W. Boy Scout Blvd.
Suite 400
Tampa, Florida 33607
Tel: (813) 864-9324
Fax: (813) 286-2900
brian.rubenstein@csklegal.com
jennifer.lulgjuraj@csklegal.com