## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DANIEL RODRIGUEZ, on his own behalf
and all similarly situated individuals,

     Plaintiff,

v.                                        CASE NO: 8:13-cv-2711-T-26AEP

HOME HEROES, LLC, and
HAROLD J. MEYERS,

     Defendants.

_____/

## O R D E R

Before the Court are cross motions for summary judgment: (1) Plaintiff's

Amended Motion for Summary Judgment and Statement of Undisputed Facts with

attachments (Dkts. 36 & 37) and Defendants' Response and Statement of Disputed Facts

with attachments (Dkts. 48 & 49); and (2) Defendants' Motion for Summary Judgment

and Statement of Undisputed Facts (Dkts. 39 & 40) and Plaintiff's Response.  (Dkt. 50).

After careful consideration of the submissions of the parties, the applicable law, and the

entire record, the Court concludes Plaintiff's motion should be denied and Defendants'

motion should be granted in part and denied in part.

## BACKGROUND

This is a case brought pursuant to the Fair Labor Standards Act, as amended, 29

U.S.C. § 201, *et seq*. (the FLSA), seeking overtime wages, minimum wages, liquidated

damages, declaratory relief, and attorney's fees and costs.  Plaintiff Daniel Rodriguez,

along with opt-in Plaintiff Zachary Fredryk, claim that they worked forty to sixty hours

per week as non-exempt plumbing technicians for Defendant Home Heroes, LLC, and

were never compensated with a minimum wage or overtime.  Defendants considered the

technicians to be exempt under the "retail or service exemption" of § 207(i), and

therefore, did not pay them minimum wage for any given workweek or overtime for their

hours worked over forty.[1]

### *The Business*

The parties do not agree on many facts at all.  Home Heroes, LLC, did business as

Plumbing Rescue and was formed in 2009 by Defendant Harold J. Meyers.[2]  Myers has a

degree in mechanical engineering and is a licensed certified plumbing contractor.[3]  Myers,

as the sole owner of Plumbing Rescue,[4] characterized his business as residential "retail,

drain cleaning, and plumbing services."[5]  Myers described his job duties as marketing,

counseling the management team, developing pay structures, and dealing with legal

---

[1]   See docket 40-3, p. 46.

[2]   See docket 40-3 (Depo. of Myers), pp. 39-42.

[3]   See docket 40-3, p. 18; docket 36-4 (License).

[4]   Plumbing Rescue concedes it is an employer for purposes of the FLSA.

[5]   See docket 40-3, pp. 40-41.

counsel.[6]  Myers controlled the finances and operations of Plumbing Rescue.[7]  Although

he was not present when either Rodriguez or Fredryk were interviewed for their jobs, he

used his authority to hire employees.[8]  He regularly exercised the authority to fire

employees.[9]  He was essentially the human resources department, and he was responsible

for ensuring compliance with wage and hour laws.[10]  Myers trained the employees,[11] and

determined their work schedules.[12]  He taught them how to fill out time sheets and

invoices.[13]  Myers did not regularly accompany the employees to the job sites.[14]

---

[6]  See docket 40-3, p. 42.

[7]  See docket 10 (Answer) at para. 8.

[8]  See docket 40-3, pp. 83-84; docket 10 at para. 6.  The general manager, not Myers, hired Rodriguez.  See docket 40-3, p. 62.

[9]  See docket 10 at para. 6.

[10]  See docket 40-3, p. 113.

[11]  See docket 40-3, p. 84.  Myers provided customer service training to Rodriguez and Fredryk for presenting the options to the homeowner as well as selling the permanent solution.  See docket 40-3, p. 84.

[12]  See docket 10 at para. 7.

[13]  See docket 40-3, p. 84.

[14]  See docket 40-3, p. 123.  Myers did, however, accompany Fredryk on jobs occasionally.  See docket 40-5 (Depo. of Fredryk), pp. 16-17; docket 40-4 (Depo. of Rodriguez), p. 10.  The Court notes that neither side has provided the full transcript of Fredryk's deposition, either electronically or by courtesy copy to chambers.  To the extent citations are made to pages not found in the record, the Court may not rely upon them.

In 2012 and 2013, Plumbing Rescue had approximately twenty to twenty-five employees.[15]  It employed one general manager, one bookkeeper, two to four call center employees, and twenty field employees.[16]  Of the field employees, there were helpers, installers, channel managers, and technicians.[17]  The helpers and installers were hourly employees and were paid overtime for their hours worked over forty.[18]  The technicians were strictly paid on commission with no guaranteed hourly or weekly wage draw.[19]

The commission was based on a percentage of sales of plumbing jobs they completed.[20]  Rodriguez was initially told that the percentages ranged from 17 to 23 percent.[21]  Either the general manager or one of their channel managers, not Myers,

---

[15]   See docket 40-3, pp. 43-44.  Plumbing Rescue stopped doing business toward the end of 2013.  See docket 40-3, p. 44.

[16]   See docket 40-3, p. 44.

[17]   See docket 40-3, pp. 45-46.  They had no more than four teams, and each team was made up of one channel manager, four technicians, and one or two helpers.  See docket 40-3, p. 47.  The technicians are referred to as either service technicians or plumbing technicians.

[18]   See docket 40-3, p. 45.

[19]   See docket 40-3, p. 45; docket 36-1 at para. 17; docket 36-2 at para. 16.

[20]   See docket 40-4, pp. 9, 22.

[21]   See docket 40-4, p. 13.

explained the commission pay plan to Rodriguez and Fredryk.[22]  They were directed to

the general manager or the channel managers with any questions about their pay.[23]

### *The Specific Employees: Rodriguez and Fredryk*

Rodriguez and Fredryk were technicians.  The duties of the technicians were to sell

the job and install the job to the homeowner.[24]  They sold a job by presenting options to

the homeowner ranging from cleaning the drains of plumbing lines to the permanent

solution of replacing the sewer system.[25]  They provided the actual plumbing and draining

services, including maintenance, repair, and installations.[26]

Both Rodriguez and Fredryk worked for Plumbing Rescue for less than one year:

Rodriguez from late October 2012 through mid-June 2013 and Fredryk from February

through November 2013.[27]  Rodriguez worked the entire period as a technician; however,

in October 2013, Fredryk's job changed from technician to installer/helper, which was

---

[22]  See docket 40-5, pp. 10, 13; docket 40-4, pp. 13, 16-18, 32, 73, 76-78, 89.

[23]  The Court notes that Rodriguez referred to human resources as Heather Reaves; however, Myers himself testified that he was the human resources department.  See docket 40-3, p. 113.  Additionally Reaves avers in this proceeding that she is the bookkeeper who maintains payroll documents.  See docket 40-8 (Aff. of Reaves), at paras. 2-3.

[24]  See docket 40-3, p. 48.

[25]  See docket 40-3, pp. 53-54, 58-59.

[26]  See docket 36-1 at para. 11; docket 36-2 at para. 10.

[27]  See docket 40-3, p. 62, 64; docket 40-7 (Time sheets of Fredryk); docket 40-6 (Time sheets of Rodriguez); docket 40-4, pp. 8, 95; docket 40-5, pp. 5, 60.

considered a demotion.[28]  Myers made the decision to demote Fredryk.[29]  Myers remembered Fredryk quitting rather than being fired one month later.[30]  At Plumbing Rescue, time sheets were filled out once a week until October 2012 when time sheets became computer-generated and the employee would sign the sheet.[31]  The computer time sheets were issued based on text messages sent to the home office from the technicians denoting their attendance on a job as well as GPS tracking on the business-owned vehicles.[32]  The employee would sign off on the computer time sheets.[33]

<em>Evidence of Hours Worked</em>

Myers testified that the average job took anywhere between thirty minutes and two weeks.[34]  With respect to the hours worked, according to Myers, the technicians worked six days a week on an average of six hours per day, typically working on one job per day.[35]  If the travel time between jobs took more than two hours, the technicians were not

---

[28]  See docket 40-3, pp. 45, 64; docket 40-7 (Time sheets 10/13/2013– 11/24/13).

[29]  See docket 40-3, p. 64.  Myers did not know whether Rodriguez was fired or quit on his own.  See docket 40-3, pp. 62-63.

[30]  See docket 40-3, p. 64.

[31]  See docket 40-3, pp. 77-78.

[32]  See docket 40-3, pp. 56-57; docket 40-8 at paras. 9-14.

[33]  See docket 40-3, pp. 56-57; docket 40-8 at para. 14.

[34]  See docket 40-3, pp. 50, 65.

[35]  See docket 40-3, pp. 61-62, 65-66.

paid for their travel time.[36]  Only travel time of less than two hours was compensated.[37]
Although travel time was not documented on the time sheets, Myers testified that the
technicians were compensated for travel time from job to job as long as it took them less
than two hours.[38]  In addition to working on jobs, the technicians sometimes attended
training sessions at the shop.[39]  According to Myers, the time for training sessions was
reflected on their time sheets.[40]  Rodriguez and Fredryk contend that they were not
compensated for attendance at the mandatory training sessions held three mornings per
week.[41]

Myers used a one-year testing period for purposes of the exemption.[42]  Myers said
he discussed using the one-year period with his attorney.[43]  The testing or representative
period was never applied to Rodriguez or Fredryk, however, because they worked less

---

[36]  See docket 40-3, pp. 73, 87, 92-93.

[37]  See docket 40-3, pp. 73, 87, 92-93.

[38]  See docket 40-3, pp. 92, 94, 95.

[39]  See docket 40-3, p. 61.

[40]  See docket 40-3, p. 61.

[41]  See docket 40-5, pp. 19, 34.

[42]  See docket 40-3, pp. 73, 87.

[43]  See docket 40-3, pp. 108-110.

than one year.[44]  Myers confirmed that there was no written agreement or memorandum

detailing how the commissioned employees were to be paid.[45]

Plaintiff seeks a determination that Plumbing Rescue cannot claim the retail or

service exemption as to Rodriguez and Fredryk, that Plumbing Rescue and Myers are

jointly liable, and that Defendants' violations of the FLSA were not made in good faith.

Defendants request summary judgment on both counts of the complaint, which seeks

recovery of overtime compensation (count I) and recovery of minimum wages (count II),

finding Myers is not liable individually as an employer and Defendants did not violate the

FLSA in their payment method to Rodriguez and Fredryk.

## SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted where there is no genuine dispute

regarding a material fact.  Fed.R.Civ.P. 56(a).  On a motion for summary judgment, the

court must review the record, and all its inferences, in the light most favorable to the

nonmoving party.  See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993,

994, 8 L.Ed.2d 176 (1962).  Neither credibility determinations nor weighing the evidence

may play any role in summary judgment proceedings.  See Reeves v. Sanderson Plumbing

Prods, Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed. 2d 105 (2000); Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).   Facts

---

[44]  See docket 40-3, pp. 115-119.

[45]  See docket 40-3, p. 112.

are material if they "might affect the outcome of the suit under the governing law."

Avenue CLO Fund, Ltd. v. Bank of Am., N.A., 723 F.3d 1287, 1293-94 (11th Cir. 2013)

(quoting Liberty Lobby, 477 U.S. at 248).   An issue of fact is "genuine" if "the evidence

is such that a reasonable jury could return a verdict for the nonmoving party." Avenue

CLO Fund, 723 F.3d at 1293-94 (quoting Liberty Lobby, 477 U.S. at 248).   The court

may not decide a genuine issue of fact at the summary judgment stage.  See Fernandez v.

Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990).  The standard remains the

same on cross-motions for summary judgment, and each motion requires a determination

on its own merits, viewing the facts in the light most favorable to the nonmoving party.

See, e.g., Am. Bankers Ins. Group v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005).

## **DISCUSSION**

At the heart of this motion is the determination of whether plumbing technicians

working for Plumbing Rescue fall into the exemption set forth in § 207(i), which is

referred to as the "retail or service exemption."  Before addressing the main issue, the

Court will consider whether Myers is an employer for purposes of the exemption.

### **Myers as an Employer**

The determination of whether an individual is an employer within the meaning of

the FLSA is a legal one based on findings of fact.  See Patel v. Wargo, 803 F.2d 632, 634

(11th Cir. 1986).  An employer is defined in the FLSA as including "any person acting

directly or indirectly in the interest of an employer in relation to an employee."  § 203(d).

In determining when a sole owner of a company is an employer for purposes of the

FLSA, the Eleventh Circuit employs a particular test: the owner or officer "must either be

involved in the day-to-day operation or have some direct responsibility for the supervision

of the employee." Wargo, 803 F.2d at 638. "The overwhelming weight of authority is

that a corporate officer with operational control of a corporation's covered enterprise is an

employer along with the corporation, jointly and severally liable under the FLSA for

unpaid wages." Wargo, 803 F.2d at 637-38 (quoting Donovan v. Agnew, 712 F.2d 1509,

1511 (1st Cir. 1983), and citing other cases).

In Wargo, there were two principal shareholders of a drug and alcohol

rehabilitation center: Dr. Wargo, the medical director, and Mr. Babowicz, the executive

director. Dr. Wargo did not own a controlling interest in the center, and did not take an

active role in the day-to-day operation. Upon Mr. Babowicz' death, however, Dr. Wargo

became the interim executive director and fired Patel. Patel admitted that Mr. Babowicz

had always been in charge of the day-to-day operation of the facility. The district court

determined that Dr. Wargo was not an employer because he was neither responsible for

Patel's contract nor involved in the day-to-day operations. The district court was

affirmed.

Some of the factors to be considered in determining whether a corporate officer or

owner has operational control are the extent to which the individual exercises the

authority to hire and fire, participates in supervision of employees, and determines the

employees' compensation.  See Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 551 F.3d 1233, 1161 (11th Cir. 2008); Olivas v. A. Little Havana Check Cash, Inc., 324 F.App'x 839 (11th Cir. 2009) (unpublished).  The evidence in Alvarez Perez revealed that after the president of the Kennel Club had suffered a heart attack, he stopped taking part in the day-to-day operations of the facility.  The district court's grant of judgment as a matter of law, finding the president was not an employer, was upheld.  In Olivas, a husband and wife owned a store, and the wife was left in charge when the husband was gone.  The trial testimony indicated that the employees were told to call the wife with questions when her husband was out of town, that she often would come to the store to watch while he was unavailable, and that she would ask for the money balance from the previous day to account for all of the money.  Based on the totality of the evidence, the district court's grant of judgment as a matter of law in Olivas that the wife was not an employer was reversed and remanded for a jury to consider the facts.

The disputed evidence in this case revolves around the extent to which Myers exercised his authority to hire and fire, to supervise, to train employees, to deal with human resource issues, and to invest himself in the day-to-day operations of the business.  Considering the highly-contested record in this case, the Court finds that credibility determinations are necessary in resolving the disputed, material facts underlying the genuine issue of whether Myers is an employer.  A reasonable juror could conclude that Myers was involved in enough of the day-to-day operations or exercised enough of his

authority so as to be considered an employer.  Accordingly, summary judgment is denied for each party on this issue.

## The Exemption

Unless an exemption exists to overtime payment, the employer must pay its employees one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week.  See § 207(a)(1); Klinedinst v. Swift Invs., Inc., 260 F.3d 1251, 1254 (11th Cir. 2001).  The employer bears the burden of proving that an exemption to overtime payment applies by "clear and affirmative evidence."  Birdwell v. City of Gadsden, Ala., 970 F.2d 802, 805 (11th Cir. 1992); Lee v. Ethan Allen Retail, Inc., 651 F.Supp. 2d 1361 (N.D. Ga. 2009).  An exemption to overtime payment under the FLSA must be narrowly construed against the employer.  Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); Birdwell, 970 F.2d at 805.

One of the exemptions to overtime compensation an employer may claim is the retail or service establishment exemption under § 207(i).[46]  Three elements must be met to

---

[46]   (I) Employment by retail or service establishment

No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.  In

establish the exemption.  First, the employees must work for a retail or service establishment.  Next, the employees must regularly receive a rate of pay over one and one-half times the federal minimum wage.  Finally, they must earn more than one-half of their salary in commissions from goods or services during a representative period of not less than one month.  § 207(i); 29 C.F.R. §§ 779.410 *et seq*.

## *Retail or Service Establishment*

The determination of whether an establishment qualifies as retail is a matter of law for the court.  See La Parne v. Monex Deposit Co., 714 F.Supp.2d 1035, 1043 (C.D. Cal. 2010).  The term "retail or service establishment" is not defined in the § 207(i) exemption.  Since its enactment in 1961, § 207(i) expressly referred to § 213(a)(2) for the definition of retail or service establishment.  See Reich v. Delcorp, Inc., 3 F.3d 1181, 1184 (8th Cir. 1993) ("Congress specified that the § 213(a)(2) definition of 'retail or service establishment' apply to § 207(i).").  After § 213(a)(2) was repealed in 1989,[47] and consequently § 207(i) no longer referred to it, courts have nevertheless continued to apply the definition.  See Delcorp., Inc., 3 F.3d at 1183 ("Absent specific congressional intent,

---

determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207(I).

[47]  29 U.S.C. § 213(a)(2) (repealed by Pub. L. No. 101-157, § 3(c)(1), 103 Stat. 939 (1989)).

we will not conclude that Congress retained the term 'retail or service establishment' in §

207(i) yet at the same time discarded thirty years of established meaning.").[48]  The same

definition has been set forth in a federal regulation.  See 29 C.F.R. §§ 779.312, .411.  The

statute and regulation defined a retail or service establishment as an establishment "75 per

centum of whose annual dollar volume of sales of goods or services (or of both) is not for

resale and recognized as retail sales or services in the particular industry."  § 213(a)(2)

(repealed by Pub. L. No. 101-157, § 3(c)(1), 103 Stat. 939 (1989)); 29 C.F.R. §§ 779.321,

.411.  Applying this definition, the employer must show both that its services are not

"sales for resale" and that the services are recognized as retail or service in the industry.

29 C.F.R. § 779.322.[49]

Plaintiff focuses on the second part of the test– whether the drain and plumbing

services performed for residential customers are recognized as retail.  See 29 C.F.R. §§

---

[48]   For some of the many cases following this lead, see Jones v. Tucker
Commc'ns, Inc., 2013 WL 6072966, at *5 (M.D. Ga. 2013); Burden v. SelectQuote Ins.
Servs., 848 F.Supp.2d 1075, 1083 (N.D. Cal. 2012); Owopetu v. Nationwide CATV
Auditing Servs., Inc., 2011 WL 4433159, at *3 n.2 (D.Vt. 2011); Kelly v. Al Tech., 2010
WL 1541585, at *10-11 (S.D.N.Y. 2010); Alvarado v. Corporate Cleaning Serv., Inc.,
719 F.Supp.2d 935, 942 n.6 (N.D. Ill. 2010); English v. Ecolab, Inc., 2008 WL 878456
(S.D.N.Y. 2008); In re Wells Fargo Home Mortg. Overtime Pay Litigation, 2008 WL
2441930 (N.D. Cal. 2008); Gatto v. Mortg. Specialists of Ill., Inc., 442 F.Supp.2d 529,
537-38 (N.D. Ill. 2006); Reich v. Cruises Only, Inc., No. 95-660-CIV-ORL-19, 1997 WL
1507504, at * 2-3 (M.D. Fla. Jun. 5, 1997).

[49]   Section 779.322 provides in part: "[T]he second requirement for qualifying as a
'retail or service establishment' within that term's statutory definition is that 75 percent of
the establishment's annual dollar volume must be derived from sales of goods or services
(or of both) *which are recognized as retail sales or services in the particular industry*."
(Emphasis added).

779.316,[50] 779.322.[51]  Plaintiff relies solely on a regulation that specifically lists plumbing

contractors as an establishment lacking "retail concept."  <u>See</u> 29 C.F.R. § 779.317.[52]

Hence, according to Plaintiff, Myers as a licensed plumbing contractor causes Plumbing

Rescue to lack the necessary retail concept to take advantage of the retail or service

establishment exemption.  By analogy, Plaintiff argues that Rodriguez and Fredryk are

plumbing subcontractors, and, therefore, the retail concept does not apply to them either.

Plaintiff urges this Court to show great deference to the regulations of the United States

Department of Labor (DOL) and cites <u>Mitchell v. Kentucky Fin. Co.</u>, 369 U.S. 290, 295,

79 S.Ct. 756, 3 L.Ed.2d 815 (1959), and <u>Burden v. SelectQuote Ins. Servs</u>., 848

F.Supp.2d 1075, 1083 (N.D. Cal. 2012).

    Defendants counter that Plumbing Rescue is not a "plumbing contractor," but

rather Plumbing Rescue is an establishment that provides general repair services for the

public, much like an automobile repair shop, a household refrigerator repair shop, and a

---

[50]  Section 779.316 provides in part: "[T]he term 'retail or service establishment' as used in the Act does not encompass establishments in industries lacking a 'retail concept.'"

[51]  Section 779.322 provides in part: "To determine whether the sales or services of an establishment are recognized as retail sales or services in the particular industry, we must inquire into what is meant by the terms 'recognized' and 'in the particular industry,' and into the functions of the Secretary and the courts in determining whether the sales are recognized as retail in the industry."

[52]  First, a business must meet the "threshold 'retail concept' test . . . before the industry characterization of its sales can be considered."  <u>Brennan v. Great Am. Disc. & Credit Co.</u>, 477 F.2d 292, 295 (5th Cir. 1973).

clock repair shop, all which qualify as a retail or service establishment.  See 29 C.F.R. §§ 779.317-321.  Defendants contend that repair services may qualify for the § 207(i) exemption even though performed for a commercial user as opposed to a homeowner, provided the commercial repair services do not require specialized facilities or equipment and the services are not different from those provided for the general public.  See 29 C.F.R. §§ 779.318(b), .329.  Plumbing Rescue serves residential customers, and Rodriguez and Fredryk sold the services and necessary retail parts or material needed to complete the job.  Furthermore, Rodriguez and Fredryk were not plumbing contractors but employees who drove company trucks.

The issue is whether Plumbing Rescue is a plumbing contractor under § 779.317, and, if so, whether this Court must defer to § 779.317 and find that Plumbing Rescue lacks the necessary retail concept to take advantage of the exemption.  Courts have applied varying degrees of deference to the regulations issued by the DOL, depending on their nature and status.[53]  Some circumstances warrant application of the more limited Skidmore deference, while others justify the higher level deference of Chevron.  Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944); Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).  Chevron deference, which is controlling on the courts, is not required when

---

[53]  See Selz v. Investools, Inc., 2011 WL 285801, at *3 n.29 (D. Utah 2011) (listing cases with differing applications of degrees of deference).

the regulation is "arbitrary, capricious, or manifestly contrary to the statute." Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1320 (11th Cir. 2011) (quoting Chevron); Buckner v. Florida Habilitation Network, Inc., 489 F.3d 1151, 1154 (11th Cir. 2007). If the regulation does not pass Chevron muster, then the more limited Skidmore deference, one of persuasion, is applied to the agency interpretation. Skidmore, 323 U.S. at 140 (holding that interpretive regulations not meeting Chevron standards still "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."); Josendis, 662 F.3d at 1299 (quoting Skidmore).

In Reich v. Cruises Only, Inc., No. 95-660-CIV-ORL-19, 1997 WL 1507504 (M.D. Fla. Jun. 5, 1997), the district court applied the arbitrary and capricious test to determine whether § 779.317 represents a reasonable construction of the FLSA. The court concluded there was no rational basis for all travel agencies to be designated as lacking "retail concept." On the contrary, Cruises Only met all the criteria listed in § 779.318 for a retail or service establishment. Other courts have also declined to defer to § 779.317 where the establishment met all the criteria of § 779.318.[54]

---

[54]   See, e.g., Alvarado, 719 F.Supp.2d at 946 (listing cases refusing to defer to § 779.317, including Martin v. Refrigeration School, Inc., 968 F.2d 3, 7 n.2 (9th Cir. 1992) (finding that "the list does not appear to flow from any cohesive criteria for retail and nonretail establishments"), and Rachal v. Allen, 376 F.2d 999, 1003 (5th Cir. 1967) (rejecting Secretary of Labor's determination that because defendant's business was part of a particular industry with no retail concept, it therefore has no retail concept)).

The approach is necessarily case-by-case in determining whether the particular establishment possesses a retail concept.  See Shultz v. Crotty Brothers Tex., Inc., 310 F.Supp. 761, 767 (E.D. Tex. 1970).  The component of the retail concept must be considered before the second part of the definition of a retail or service establishment – recognized as retail in the particular industry– can be determined.[55]  After passing the initial hurdle of determining the existence of retail concept, discerning the meaning of "retail" with respect to the particular industry remains with the courts and not the defendant or the defendant's industry.  Owopetu v. Nationwide CATV Auditing Servs., Inc., 2011 WL 4433159, at *4 (D.Vt. 2011) (citing English v. Ecolab, Inc., 2008 WL 878456, at *12 (S.D.N.Y. 2008), which cites Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 204-05, 86 S.Ct. 737, 746-47, 15 L.Ed.2d 694 (1966)).[56]  In resolving the meaning, the courts further look at "whether the business (1) sells goods to the general public; (2) serves the everyday needs of the community; and (3) is at the end of the stream of distribution and does not take part in the manufacturing process."  Owopetu, 2011 WL

---

[55]   See Selz, 2011 WL 285801, at *6 (noting that "cases often discuss this requirement [being recognized in the industry as a retail establishment] in conjunction with the 'retail concept' question.").

[56]   A particular industry may be considered as providing "retail" services depending on "how persons in the industry and with knowledge of the industry view the establishment." La Parne, 714 F.Supp.2d at 1041 (citing Acme Car & Truck Rentals, Inc. v. Hooper, 331 F.2d 442, 446 (5th Cir. 1964)).

4433159, at *4 (citing <u>La Parne</u>, 714 F.Supp.2d at 1043); <u>see also</u> 29 C.F.R. § 779.318(a).[57]

Although Plumbing Rescue is not a plumbing contractor, its owner holds a plumbing contractor's license.  According to Rodriguez and Fredryk, they were not subcontractors, but were employees driving company trucks, selling services of draining or plumbing, and using materials and parts purchased for the job.  The record supports a finding that almost all of the jobs tackled by Plumbing Rescue were residential, not commercial.  There was no testimony that Plumbing Rescue acted as a plumbing contractor in the new construction or remodeling of homes.  The goods and services sold to the homeowner entailed cleaning out drains and pipes, or if the sale was successful, installing or reworking new plumbing and drainage pipes.  The customers were "at the very end of the stream of distribution," with no resales by the very nature of the items cleaned or installed.  In essence, Plumbing Rescue is a repair service establishment,

---

[57]  Section 779.318(a) provides in pertinent part:

> Typically a retail or service establishment is one which sells goods or services to the general public.  It serves the everyday needs of the community in which it is located.  The retail or service establishment performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process. . . .  It provides the general public its repair services and other services for the comfort and convenience of such public in the course of its daily living.

29 U.S.C. § 779.318(a).

providing plumbing services as everyday needs of the community.  There is no evidence that Plumbing Rescue manufactures any of the materials used in the draining and plumbing jobs performed.

In addition to applying the factors set forth in § 779.318(a), the Court has also reviewed an opinion letter issued by the DOL addressing a plumbing contractor versus a company that provides plumbing services.  See Opinion Letter FLSA2006-22, 2006 WL 2067713 (Dep't of Labor Jun. 23, 2006).  While an opinion letter from the DOL is not controlling, it may nevertheless provide guidance, and it is entitled to respect under Skidmore.  See Gregory v. First Title of Am., Inc., 555 F.3d 1300, 1302 (11th Cir. 2009) (citing Christensen v. Harris County, 529 U.S. 576, 587, 120 S.Ct. 1655, 1662-63, 146 L.Ed.2d 621 (2000)).   The opinion letter, after reciting all of the applicable regulations, including §§ 779.314-.321, states that where the type of services provided are "more akin to a repair shop than a plumbing contractor," the establishment may claim the exemption.

Having evaluated whether Plumbing Rescue acts a plumbing contractor, which under § 779.317 lacks retail concept, the Court finds that Plumbing Rescue is not a plumbing contractor for purposes of § 779.317.  The Court need not find that the regulation is arbitrary and capricious.  Accordingly, Plumbing Rescue is a retail or service establishment for purposes of the exemption of § 207(i), and summary judgment on this issue is granted for Defendants.

*Regular Rate of Pay as One and One-half Times Minimum Hourly Rate*

The regular rate of pay is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed" and "by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments."  29 C.F.R. § 779.419(b) (quoting <u>Walling v. Youngerman-Reynolds Hardwood Co.</u>, 325 U.S. 419, 424, 65 S.Ct. 1242, 1245, 89 L.Ed. 1705 (1945)).  "It is a rate per hour, computed for the particular workweek by a mathematical computation in which hours worked are divided into straight-time earnings for such hours to obtain the statutory regular rate."  29 C.F.R. § 779.419(b).  The averaging over two or more weeks is not permitted under the "single workweek" standard.  <u>See</u> 29 C.F.R. § 778.104.[58]  Based on this record, the Court finds that a genuine issue of material facts exists with regard to the hours worked, including idle time, such that it cannot be determined whether Rodriguez and Fredryk were compensated a regular rate of pay commensurate with the dictates of § 207(i)(1).

<u>*More than Half of Compensation Derived From Commissions on Goods or Services*</u>

Whether Defendant abided by the particular record-keeping requirements cited by Plaintiff and whether the commission rate was bona fide, hinge on determinations of

---

[58]   Where there are no records other than the employee's testimony regarding the number of hours worked per week, at least one district court has divided the annual salary by the number of hours claimed worked per week to derive the weekly pay, and then further calculated the hourly rate to determine whether the second requirement of § 207(i) has been met.  <u>See</u> <u>Kuntsmann v. Aaron Rents, Inc.</u>, 903 F.Supp.2d 1258 (N.D. Ala. 2012).

material facts which are in dispute.  Consequently, the Court finds that summary

judgment is precluded as to whether § 207(i)(2) was satisfied.

### Liquidated Damages

The issue of liquidated damages is a fact-intensive evaluation best left after a trial

with the opportunity to make credibility determinations.  Summary judgment is denied on

the issue of liquidated damages.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1)    Plaintiff's Amended Motion for Summary Judgment (Dkt.  37) is **DENIED**.

(2)    Defendants' Motion for Summary Judgment  (Dkt. 39) is **GRANTED** in

part and **DENIED** in part.

**DONE AND ORDERED** at Tampa, Florida, on February 17, 2015.


_s/Richard A. Lazzara_
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**


COPIES FURNISHED TO:
Counsel of Record